UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jon Kietzer,

     Plaintiff,

 v.

Doug Forsman and Michael Campion,
the Commissioner of the Minnesota
Department of Public Safety,

     Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 08-5775 ADM/JJG

_____

Randall G. Knutson, Esq., and Daniel J. Bellig, Esq., Farrish Johnson Law Office, Chtd., Mankato, MN, appeared for and on behalf of Plaintiff.

Thomas C. Vasaly, Esq., Assistant Attorney General, St. Paul, MN, appeared for and on behalf of Defendants.
_____

## I. INTRODUCTION

On September 29, 2009, the undersigned United States District Judge heard oral argument on the Motion to Dismiss or for Summary Judgment [Docket Nos. 11, 15] of Defendants Michael Campion ("Campion") and Doug Forsman ("Forsman") (collectively "Defendants"). Plaintiff Jon Kietzer ("Plaintiff") alleges constitutional violations under 42 U.S.C. § 1983 and state-law claims against Defendants arising out of his arrest.[1] For the reasons set forth below, Defendants' Motion is granted.

---

[1] In Plaintiff's Memorandum of Law Opposing Defendants' Motion to Dismiss or for Summary Judgment [Docket No. 23] and at oral argument, Plaintiff conceded that his unlawful search, invasion of privacy, violation of his Miranda rights and his right to counsel, and cruel and unusual punishment claims are without merit, and he consented to their dismissal. As a result, these claims will not be addressed.

## II. BACKGROUND[2]

Plaintiff is the Vice President and Loan Officer of Community Bank in Mankato. Compl. ¶ 13 [Docket No. 1]. He is also a member of the Board of Directors and Loan Valuation Committee. Hanson Decl., [Docket No. 20] Ex. C2 (state district court order dismissing charges against Plaintiff, hereinafter referred to as "State District Court Order"). Defendant Michael Campion is the Commissioner of the Minnesota Department of Public Safety. Campion Decl. [Docket No. 21] ¶ 1. Defendant Doug Forsman is a Special Agent for the Alcohol and Gambling Enforcement Division of the Minnesota Department of Public Safety. Forsman Decl. [Docket No. 19] ¶ 1.

In 2004, Plaintiff owned two properties in Mankato, Minnesota: (1) a house and a parcel of land at 1320 Warren Street (collectively "1320 Warren") and (2) a vacant lot with a well and power at Lot 1, Block 1, Ridgewood Estates ("Ridgewood Lot"). State District Court Order at 3. In November 2004, a professional appraisal on 1320 Warren Street valued the house ("the 1320 physical structure") at $121,440.00 and the land at $31,560.00 for a total appraised value of $153,000.00. Bellig Aff., [Docket No. 24] Ex. F. Shortly thereafter, Plaintiff donated the 1320 physical structure to Minnesota Game & Fish Preservation ("MGF"), a non-profit organization, and signed IRS Form 8283 declaring that the donation had an appraised value of $100,280.00. State District Court Order at 3. In 2005, MGF purchased the Ridgewood Lot from Plaintiff for

---

[2] In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). Thus, Plaintiff at this stage in the proceedings is by law entitled to all inferences in his favor.

$40,000.00 and planned to move the 1320 physical structure onto the Ridgewood Lot, refurbish it, and sell the remodeled structure and lot together. Forsman Decl. Ex. C2; State District Court Order at 3. Plaintiff assisted MGF in securing a $100,000.00 line of credit ("the Loan") to finance the purchase of the Ridgewood Lot and the expenses of remodeling the 1320 physical structure. Forsman Decl. Ex. C2. However, MGF did not remodel the 1320 physical structure nor relocate it to the Ridgewood Lot; instead it was moved from 1320 Warren Street to a nearby field. State District Court Order at 3. Eventually, a third party purchased the Ridgewood Lot and agreed to take the 1320 physical structure as well. Id.

In 2007, pursuant to a request by the Minnesota Gambling Control Board, Forsman began investigating MGF. Forsman Decl. ¶ 1. During his investigation, Forsman learned that Community Bank had made seven loans to MGF between February 2005 and August 2006, including the one at issue in this dispute. Forsman Decl. Ex. C3. Forsman found the file for the Loan contained the appraisal for 1320 Warren but no appraisal for the Ridgewood Lot. Forsman Decl. Ex. C5. Forsman determined that the appraised value of 1320 Warren was the security for the Loan. Forsman Decl. Ex. C5, C7. However, because the 1320 physical structure had been moved off of 1320 Warren Street, the value of the unattached structure was significantly lower than the $121,440.00 identified in the appraisal.[3]

Forsman was informed by Mike Ogaard ("Ogaard"), Chief Operating Officer for Community Bank, that Community Bank's lending policy requires a 65% loan to collateral ratio

---

[3] Forsman learned from Greg Hawkinson, the appraiser of 1320 Warren, that the $121,440.00 value for the house listed on the appraisal report was intended to be used as a cost basis value related to building the house brand new and was not a valid value for an older house or a house resting on cement blocks without a foundation and not connected to utilities.

3

for all its loans. State District Court Order at 3. Ogaard further stated that

> the total appraisal value of $153,000 cited in the appraisal report for 1320 Warren . . . appears to have been used as the basis for the valuation report and security mortgage lien for the loan to purchase [the Ridgewood Lot], which if true, would be an inappropriate use of the appraisal and in violation of the bank's policies, as well as state and federal banking laws.

Forsman Decl. Ex. C6-C7. In 2005, Blue Earth County appraised the Ridgewood Lot at $26,300 and the 1320 physical structure - now sitting on cement blocks - at $19,000, for a total appraised tax value of $45,300. Id. Since 65% of $45,300 is only $29,445.00, and the Loan was for $100,000.00, Forsman suspected that Plaintiff used the full $153,000.00 appraisal on 1320 Warren as the collateral to secure the Loan.[4] Id.

Because Plaintiff was personally involved with the transaction, he asked another Community Bank loan officer, Richard H. Clarksean ("Clarksean"), to sign the Loan to avoid a conflict of interest. State District Court Order at 4. On August 20, 2007, Forsman interviewed Clarksean at the Mankato Police Department. Id. Forsman showed Clarksean the appraisal and Community Bank's Evaluation Committee report on the Ridgewood Lot. Forsman Decl., Ex. A8. Clarksean admitted that even though he signed as the loan closing officer, Plaintiff "was running the bank" and Clarksean had never actually examined the loan documents and had little familiarity with the details of the Loan. Id., Ex. A5-A6, A12-A15. A portion of Forsman's interview includes this colloquy:

> Forsman: So, what's your observation or opinion of this appraisal being used for this loan?
> Clarksean: Appraisal is not accurate for this loan. It's fraudulent.

---

[4] 65% of $153,000.00 is $99,450.00.

> . . . .
> Forsman: So you agree that the use of the appraisal for this loan pretty much constituted fraud?
> Clarksean: Yes.
> Forsman: Loan fraud?
> Clarksean: Yes.

Id., Ex. A10-11.

On October 23, 2007, Forsman asked Plaintiff to come to the Mankato Police Department to answer some questions about the Loan. Compl. ¶¶ 15-16. In his Complaint, Plaintiff avers during the interview, he felt he was under arrest and was told he could not contact his attorney. Id. ¶ 17. According to a transcript of the interview, however, Plaintiff expressly acknowledged that the interview was voluntary. The parties disagree about whether Forsman permitted Plaintiff to speak with an attorney.[5] Bellig Aff. Ex. C. Forsman asked Plaintiff a series of questions about his relationship with MGF and the Loan. See id. Forsman specifically inquired about Plaintiff's use of the appraised value on 1320 Warren as security for the Loan to MGF. Id. Forsman accused Plaintiff of fraud and Plaintiff responded that the Loan was approved on the strength of the personal guaranty of Stephen Wiemart, an officer of MGF worth in excess of $4 million. Id. The following exchange occurred:

> Plaintiff: If you. I'm pretty sure that if you look at the loan documents, Steve Wiemert personally guaranteed that hundred thousand dollar loan.
> Forsman: Here's all the loan documents. You show me where it is on there. And I had them go back and look twice. It says it right here. This was based on collateral.
> Plaintiff: No that doesn't. That doesn't mean that there's no personal guarantee.

---

[5] Since Plaintiff has abandoned his violation of his right to counsel claim, this conflict need not be resolved.

| | |
|---|---|
| Forsman: | It was based on the collateral. |
| Plaintiff: | Both.  Collateral and personal guarantee.  We get personal guarantees on all of our loans. |
| Forsman: | It was a mortgage loan.  There was a mortgage lien on this land. |
| Plaintiff: | Sure there was.  And we also get personal guarantee. |
| Forsman: | That's the resolution. |
| Plaintiff: | Yup.  Well it's not in here, but again I'd like to, I'd like to find it because I'm relatively certain that we have a personal guarantee by Steve Wiemert. |
| Forsman: | Well guarantee or not, I don't see one with it.  But that's a mute [sic] point.  It's, you're diverting. |
| Plaintiff: | Not for us it's not. |
| Forsman: | Well it is for the bank. |
| Plaintiff: | No it's not for the bank.  The bank would not have done this loan without Steve Wiemert personally guaranteeing it. |
| Forsman: | Jon, this loan was based on this appraisal.  This appraisal was inappropriately used for this loan.  Do you agree or not? |
| Plaintiff: | Somewhat.  This house was, should have been part of this appraisal.  It should have been separated out.  And in addition to this house, the land should have been used. |

Id.

Following the interview, Forsman arrested Plaintiff.  Bellig Aff., Ex. L.  He was not permitted to call his attorney or his wife to get medication for claustrophobia.  Compl. ¶ 23. Plaintiff was released at 5:00 p.m. that day.  Id. ¶ 30.

On October 25, 2007, Forsman again spoke with Ogaard.  Bellig Aff., Ex. P.  Ogaard told Forsman "that [Plaintiff's loan processor] had discovered additional documents relating to the original [MGF] loan."  Id.  Ogaard and Forsman discussed "new items that Agent Forsman had not seen before," specifically the "original loan guaranty from Stephen Wiemert."  Id.

On May 30, 2008, Forsman submitted his investigative report to the Blue Earth County

Attorney's Office. Forsman Decl. ¶ 5. An Assistant County Attorney decided to file criminal charges against Plaintiff in the summer of 2008, but did not do so until after the filing of this § 1983 action on October 20, 2008. Hanson Decl. ¶¶ 2-4. A state court judge signed a criminal complaint, based on Forsman's affidavit of probable cause, to charge Plaintiff with the crimes of theft by swindle and forgery. Forsman Decl. ¶¶ 5-6. After a subsequent evidentiary hearing, the state court ruled the Loan was based on Wiemert's personal guarantee, not on the appraisal Plaintiff placed in the loan file, and dismissed the theft by swindle charge.[6] State District Court Order.

### III. DISCUSSION

**A.      Standard of Review**

Ordinarily, if a district court relies on "matters outside the pleadings" in considering a motion to dismiss, the motion to dismiss is converted to one for summary judgment. BJC Health Sys. v. Columbia Cas. Co., 348 F.3d 685, 687-88 (8th Cir. 2003). A court has "complete discretion" in determining whether to accept materials beyond the pleadings, but should not do so if the non-moving party has not yet had an opportunity to discover facts or evidence to support its allegations. Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 701 (8th Cir. 2003); BJC Health Sys., 348 F.3d at 687-88. In general, "[m]ost courts view matters outside the pleading[s] as including any written or oral evidence in support of or in opposition to the pleading[s] that provides some substantiation for and does not merely reiterate what is said in the pleadings." BJC Health Sys., 348 F.3d at 687. Both parties rely on affidavits and exhibits outside of the

---

[6] The forgery charge was dismissed on the ground that although the value of the house Plaintiff donated decreased once it had been removed from its original lot, Plaintiff's mere insertion of the house's value directly from the appraiser's report did not constitute forgery.

7

pleadings, therefore the Court will consider the motion as one seeking summary judgment.

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

"In order to survive a motion for summary judgment under § 1983, the plaintiff must raise a genuine issue of material fact as to whether (1) the defendants acted under color of state law, and (2) the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." Cooksey v. Boyer, 289 F.3d 513, 515 (8th Cir. 2002). Defendants do not dispute that, as law enforcement officers, they acted under color of state law. They argue, however, that their conduct was objectively reasonable and that if they engaged in any wrongful conduct, the doctrine of qualified immunity protects them from liability.

**B.  Analysis**

   **1.  Federal Claims**

Defendants initially seek summary judgment on Plaintiff's individual-capacity claims by

arguing that Plaintiff has failed to establish a constitutional violation.[7] Defendants also seek summary judgment on Plaintiff's official-capacity claims on the ground of sovereign immunity.

### a. Individual-Capacity Claim Against Forsman

Plaintiff asserts a claim under 42 U.S.C. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

Plaintiff argues that his arrest on October 23, 2007 was a violation of his Fourth Amendment right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. The parties agree that no search occurred; therefore, the only issue is the legality of Plaintiff's warrantless seizure. A warrantless arrest must be supported by probable cause. Smithson v. Aldrich, 235 F.3d 1058, 1062 (8th Cir. 2000) (citing Hannah v. City of Overland, Mo., 795 F.2d 1385, 1389 (8th Cir. 1986)). Probable cause exists if the totality of the facts, based on reasonably trustworthy information, would justify a prudent person in believing the individual arrested had committed an offense at the time of the arrest. Id.

---

[7] When a defendant raises the defense of qualified immunity, the mandatory procedure was, until recently, to first determine whether the plaintiff has alleged a deprivation of a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only then was a court permitted to turn to the qualified immunity analysis of whether the right allegedly implicated was clearly established at the time of the events in question. Id. The Court recognizes that, in light of the Supreme Court's decision in Pearson v. Callahan, it has discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first. See 129 U.S. 808, 815-16 (2009). The Court concludes that, in this case, it is appropriate to start with the question of whether Plaintiff has established a constitutional violation.

9

Given the facts know to Forsman at the time of Plaintiff's arrest, there was an articulable basis of probable cause to arrest Plaintiff for theft. Specifically, Forsman considered (1) the presence of the 1320 Warren appraisal in the loan file (2) Ogaard's statements about Plaintiff's inappropriate usage of the appraisal for 1320 Warren as the basis for extending the Loan to MGF; (3) Clarksean's acknowledgment that Plaintiff's actions constituted fraud; and (4) Plaintiff's own admission that the appraisal of the 1320 physical structure may have been improperly used as collateral for the Loan.[8]

Plaintiff now alleges that Forsman did not provide Clarksean with the entire loan file, showing him only the appraisal. Thus, Plaintiff suggests that Forsman may have had a copy of the Wiemert personal guarantee prior to interviewing Clarksean and arresting Plaintiff but withheld it. However, Plaintiff presents no evidence in support of his suggestion. To the contrary, Forsman received the loan file, which did not include Wiemert's personal guarantee, directly from Community Bank a few months prior to Plaintiff's arrest. In addition, Ogaard admitted that he provided Forsman, for the first time, a copy of the Wiemert guaranty two days *after* Plaintiff was arrested. Furthermore, the loan file contained a copy of the 1320 Warren appraisal (listing the combined value of the 1320 physical structure and the land as $153,000.00) as the total "value of land, buildings, and improvements" being offered as security for the Loan. Accordingly, the Court finds that an officer of reasonable competence would have concluded that probable cause existed to arrest Plaintiff. Therefore, Defendants' motion for summary judgment is granted with respect to Plaintiff's claim of an unlawful arrest.

---

[8] The factual basis relied on by a state court judge in finding probable cause for issuing the criminal complaint was substantially the same information.

Defendants argue that even if probable cause to arrest Plaintiff was lacking, Forsman is entitled to qualified immunity. "Law enforcement officers are entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so - provided that the mistake is objectively reasonable." Smithson, 235 F.3d at 1062. This standard expressly acknowledges that officers may be wrong in determining that probable cause to arrest exists, but still may be immune from suit unless they "knowingly violate[d] the law" or were "plainly incompetent." Gorra v. Hanson, 880 F.2d 95, 97 (8th Cir. 1989) (alteration in original) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Plaintiff argues that although a copy of the Wiemert personal guarantee was not in the loan file prior to Plaintiff's arrest, Plaintiff expressly told Forsman during the October 23 interview that the Loan was based on both the appraisal for the 1320 physical structure *and* Weimert's guarantee. While the transcript of Plaintiff's interview confirms that Plaintiff told Forsman about the guarantee, Plaintiff never explained why the Wiemert guarantee was missing from the loan file nor did he offer to provide Forsman with a copy. In addition, Plaintiff admitted that the appraisal for the 1320 physical structure should not have been used in making the Loan and that he may have had a conflict of interest because he did not abstain from approving the Loan even though he was a party to the underlying land sale. A reasonable investigating officer could well have concluded that, based on Ogaard and Clarksean's statements, the presence of the 1320 Warren appraisal in the loan file, Plaintiff's statements, and Plaintiff's failure to fully explain at his interview the propriety of the use of the 1320 Warren appraisal as security for the Loan, Plaintiff was engaged in unlawful activity. On these facts, the Court cannot properly conclude that Forsman was "plainly incompetent" or "knowingly

11

violate[d] the law." Malley, 475 U.S. at 341. Forsman is therefore entitled to qualified immunity on the unlawful arrest claim.

### b. Individual-Capacity Claim Against Campion

Plaintiff asserts that Campion violated his constitutional rights by being responsible for Forsman's conduct. However, Plaintiff presents no evidence that Campion knew of or had any involvement in Forsman's conduct. Thus, Plaintiff asserts a supervisory liability claim against Campion, which is cognizable only insofar as Plaintiff's claims against Forsman survive. Because summary judgment is granted on Plaintiff's claim against Forsman, Plaintiff's claim for relief against Campion likewise fails.

### c. Official-Capacity Claim Against Defendants

"A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment." Andrus ex rel. Andrus v. Arkansas, 197 F.3d 953, 955 (8th Cir. 1999). Defendants were state employees at all relevant times. Therefore, this Court lacks subject-matter jurisdiction over Plaintiff's official-capacity claims for damages.

### 2. State-law Claims

In addition to his § 1983 claims, Plaintiff also asserts several state-law claims, including negligence, false imprisonment, malicious prosecution, abuse of process, defamation, and intentional and negligent infliction of emotional distress. The Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a), which permits a district court to exercise supplemental jurisdiction over claims that are part of the same case or controversy as the claims that fall within the court's original jurisdiction. A district court has discretion to decline supplemental jurisdiction when "all claims over which it has original jurisdiction" have been dismissed. 28

U.S.C. § 1367(c)(3). In most cases, when federal and state claims are joined and the federal claims are dismissed, the pendent state claims are dismissed without prejudice "to avoid '[n]eedless decisions of state law . . . as a matter of comity and to promote justice between the parties.'" Ivy v. Kimbrough, 115 F.3d 550, 552-53 (8th Cir. 1997) (alteration in original) (citing United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)). Where, however, the federal and state claims rely on the same facts, the court's exercise of supplemental jurisdiction may be proper. Ivy, 115 F. 3d at 553. The Court declines to exercise jurisdiction over Plaintiff's state-law claims.

### IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss or for Summary Judgment [Docket Nos. 11, 15] is **GRANTED**;

2. Count Eleven of Plaintiff's Complaint [Docket No. 1] is **DISMISSED WITH PREJUDICE**; and

3. Counts One through Ten of the Complaint are **DISMISSED WITHOUT PREJUDICE** for reassertion of state-law claims in state court.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: October 14, 2009.